Jacqueline P. HARRISON, Appellant,

v.

CHILDREN'S NATIONAL MEDICAL
CENTER, Appellee.

No. 93–CV–231.

District of Columbia Court of Appeals.

Argued May 25, 1994.
Decided June 28, 1996.

Robert B. Fitzpatrick, Washington, DC, with whom Mark D. Laponsky and Jonathan R. Topazian, Baltimore, MD, were on the brief, for appellant.

Joseph R. Damato, Washington, DC, with whom Ronald A. Lindsay and Nelson D. Cary were on the brief, for appellee.

Woodley B. Osborne, Washington, DC, filed a brief for the Metropolitan Washington Employment Lawyers Association as amicus curiae.

Before WAGNER, Chief Judge,* and FERREN and TERRY, Associate Judges.

TERRY, Associate Judge:

This appeal marks the first time that we have been called upon to interpret the District of Columbia Family and Medical Leave Act ("FMLA" or "the Act"), D.C.Code §§ 36–1301 et seq. (1993). Appellee, Children's National Medical Center (hereafter "Children's Hospital" or "the hospital"), discharged appellant Harrison from her employment after she was absent from work for medical reasons for more than seventeen weeks. Ms. Harrison then brought suit under the FMLA, which guarantees an employee sixteen weeks of medical leave during any twenty-four-month period. The trial court granted summary judgment in favor of the hospital, and Ms. Harrison brought this appeal, contending that her use of four weeks of previously earned sick leave should not have been counted in calculating the Act's sixteen-week protected period. We affirm.

I

Appellant Harrison, an employee of Children's Hospital, called in sick on May 13, 1991, because she was experiencing pain from a prior back injury. As of that date,

---

* Judge Wagner was an Associate Judge of the court at the time of argument. Her status changed to Chief Judge on June 14, 1994.

she had accumulated a total of 186 hours of paid sick leave under the hospital's personnel rules. Harrison used that paid sick leave through the pay period ending June 8; thereafter she took unpaid leave.

Ms. Harrison's absence from work continued from May 13 through September 10, more than seventeen weeks. On September 10 she told the hospital that she was ready to return to work. However, on September 24 the hospital notified Ms. Harrison that, because she had "exhausted all of [her] leave protection under the D.C. Family [and] Medical Leave Act," her employment was "terminated."

Ms. Harrison filed this suit under D.C.Code § 36–1310, part of the FMLA, alleging that the hospital had violated the Act by firing her because she had been away on unpaid leave for just over thirteen weeks (but acknowledging that she had taken an additional four weeks of paid sick leave). The hospital moved for summary judgment, which the trial court granted. In its order the court stated that the sole issue before it was "whether the FMLA allows Plaintiff to 'tack on' accumulated paid sick leave to the 16 weeks of medical leave protected by the Act." The court ruled that such tacking was not allowed:

> The FMLA ... sets up a protected period of only 16 weeks. Depending on an employee's existing benefit plan, she can choose to take this leave either paid or unpaid. In no event, however, is the FMLA's protected period longer than 16 weeks.

## II

After this case was argued, this court *sua sponte* questioned whether the trial court should have dismissed Ms. Harrison's complaint because she had failed to exhaust the administrative remedies available to her under the FMLA. We asked the parties to file supplemental briefs on the exhaustion issue. *Amicus* also filed a brief with leave of court, and the hospital filed an additional brief in response to that of *amicus*.[1]

1. The last of this series of briefs was filed on February 23, 1996.

The exhaustion issue is not an easy one because the FMLA is anything but a model of clarity, and its implementing regulations [2] are not particularly helpful. The FMLA has two sections governing relief. The first and more detailed provision, D.C.Code § 36–1309, establishes an administrative enforcement procedure and describes it with great specificity; the second and far briefer provision, D.C.Code § 36–1310, discusses only enforcement by civil action and makes no mention of administrative relief. Section 36–1309(a) states:

> The Mayor shall provide an administrative procedure pursuant to which a person claimed [*sic*] to be aggrieved under this chapter may file a complaint against an employer alleged to have violated this chapter. A complaint shall be filed within one year of the occurrence or discovery of the alleged violation of this chapter.

Section 36–1309(b) goes on to prescribe in detail what the administrative procedure "shall include, but not be limited to...."

Under section 36–1309, there are two ways in which an aggrieved party may gain access to the courts. Subsection (c) permits any person who is "adversely affected or aggrieved by an [administrative] order or decision issued pursuant to subsection (b)" to seek direct review in this court under the District of Columbia Administrative Procedure Act, D.C.Code § 1–1510 (1992). But subsection (e) of section 36–1309 appears to provide an alternative remedy. It states:

> The entire administrative enforcement procedure outlined in subsections (a) and (b) of this section, including the formal hearing, shall take no longer than 150 days to complete from the date the complaint is filed. If the Mayor fails to make a reasonable effort to comply with the deadline requirements of the administrative enforcement provisions prescribed by this subsection and the rules promulgated by the Mayor, the person who initiated the administrative enforcement procedure against the employer *may file a civil ac-*

2. 4 DCMR §§ 1600–1699 (1995).

*tion against the employer* pursuant to § 36–1310. [Emphasis added.]

From the supplemental briefs we learned that Ms. Harrison filed an administrative complaint with the Department of Human Rights[3] on October 30, 1991, just over a month after she was fired. The allegations in that complaint were essentially the same as those contained in her complaint in the instant civil action. The Department advised her by letter dated January 15, 1992, that "due to budget constraints" the "processing" of her case would require approximately twelve to fifteen months. However, because the statute of limitations requires that a civil action on an FMLA claim be filed within one year "after the occurrence or discovery of the alleged violation,"[4] Ms. Harrison waited only a little more than eight months after receiving the Department's letter and then sought alternative relief. She filed her complaint in the instant case on September 23, 1992, one day before the statute ran.[5] Exactly three months later, on December 23, the Department sent a letter to Children's Hospital, enclosing interrogatories and a request for documents and directing the hospital to respond within thirty days. This appears to have been the first step in the Department's "processing" of Ms. Harrison's administrative complaint, which had been filed more than a year earlier.

Given this state of affairs, Ms. Harrison argues that she has sufficiently exhausted her administrative remedies and urges us to rule on the merits of her claim. She relies primarily on D.C.Code § 36–1309(e), quoted at page 573, *supra.* Because the statute says that the "entire administrative enforcement procedure ... shall take no longer than 150 days to complete from the date the complaint is filed," she maintains that she was entitled to file this suit after 150 days had elapsed without any action by the Department. To be sure, the statute also states that if the

Mayor (*i.e.*, the Department) "fails to make a reasonable effort to comply with the deadline requirements," the aggrieved employee may then file a civil action. Ms. Harrison asserts that in her case the Department made no effort at all, let alone a reasonable effort, to meet the statutory deadline, and that she was therefore under no obligation to wait any longer for the Department to act. There is some support for this argument in the legislative history. The committee report on the bill which became the FMLA states that if the Department fails to make a reasonable effort to comply with the deadlines, "the employee may abandon the administrative enforcement procedure and file a civil action *de novo* against the employer in the Superior Court of the District of Columbia." Council of the District of Columbia, Report on the District of Columbia Family and Medical Leave Act of 1990, Bill 8–82, at 16–17 (May 30, 1990).

The hospital argues, on the other hand, that once Ms. Harrison chose to seek administrative relief, she was "required to continue that process" and to wait for the Department to issue a final ruling before going to court. In particular, the hospital strenuously maintains that the 150–day provision in section 36–1309(e) does not entitle the claimant to rush to the courthouse on the 151st day and file a civil action if the Department has not ruled on her complaint: "Had the City Council intended to adopt the 150–days–and–out rule appellant advocates, the City Council could certainly have said so." *Amicus* strives to find a middle ground, suggesting that the running of the statute of limitations should determine whether the Department has made a reasonable effort to act within the time contemplated by the FMLA:

> We recognize that the "reasonable effort" language allows some looseness to the administrative process, and that as a consequence, the 150–day period cannot be viewed as an absolute deadline. But the

---

3. The Mayor's authority to administer the FMLA has been delegated to the Director of the Department of Human Rights. 4 DCMR § 1600.3 (1995).

4. D.C.Code § 36–1310(b) (1993).

5. Surprisingly, neither the record on appeal nor the initial briefs of the parties made any mention of the prior administrative proceedings. It appears to be undisputed, however, that Ms. Harrison did file an administrative complaint, which languished in the Department of Human Rights for more than a year and was still pending when she filed her civil action in the Superior Court.

Act is also plain in its requirement that *both* an administrative complaint *and* civil litigation *must* be commenced within one year of the violation or be forever barred. By adding the "reasonable effort" provision, then, the City Council surely did not intend to require an aggrieved individual to await progress on her administrative complaint until even beyond the one-year period of limitations applicable to the commencement of court litigation.

*Amicus* brief at 4–5 (emphasis in original).

Each of these arguments, including that of *amicus,* has some merit. The problem lies with the statute. It simply does not make clear whether the administrative and civil remedies are complementary or mutually exclusive. *Cf. Brown v. Capitol Hill Club,* 425 A.2d 1309, 1313 (D.C.1981) (aggrieved party who sought administrative relief under the Human Rights Act "was barred from bringing the same action in court" after agency found no probable cause to support his complaint). Nor does the statute tell us whether the limitation period for filing a civil complaint is tolled if the Department fails to act, or to make "a reasonable effort" to act, within the 150–day deadline. We have concluded, however, that we need not try to answer these questions.

■ There is a body of case law holding that a court may elect not to resolve a difficult jurisdictional issue but, instead, may put that issue aside and rule on the merits when the merits are clearly against the party who invokes the court's jurisdiction. *E.g., Norton v. Mathews,* 427 U.S. 524, 532, 96 S.Ct. 2771, 2775–76, 49 L.Ed.2d 672 (1976); *Secretary of the Navy v. Avrech,* 418 U.S. 676, 677–678, 94 S.Ct. 3039, 3039–40, 41 L.Ed.2d 1033 (1974); *Adams v. Vance,* 187 U.S.App. D.C. 41, 45 n. 7, 570 F.2d 950, 954 n. 7 (1978). We followed this course very recently in *Stevens v. Quick,*

678 A.2d 28, 30–31 (D.C.1996), and we do so again here. Although the requirement that an aggrieved party exhaust all administrative remedies before coming to court is not, strictly speaking, a jurisdictional rule,[6] we think it is close enough to permit us to rely on cases such as *Norton* and reach the merits of this case without deciding the exhaustion issue, because the merits are so clearly against appellant Harrison. *Cf. Chinese American Civic Council v. Attorney General,* 185 U.S.App. D.C. 1, 5, 566 F.2d 321, 325 (1977) (declining to decide standing issue "when the merits of the case readily provide a fair, clear resolution of the appeal").

We turn, accordingly, to the merits.

### III

■ The FMLA is designed to protect the employment benefits[7] and seniority of an employee who takes medical leave. D.C.Code § 36–1305(a). Thus it ensures that an employee on medical leave retains his or her benefits under a group health plan, though the employer may require the employee to continue contributing to the plan while on leave as a condition of retaining the benefits. D.C.Code § 36–1305(b). The Act also provides that an employee returning from medical leave will be restored to the same position which that employee held when the leave began, or to an equivalent position. D.C.Code § 36–1305(d).

The case before us arises from a dispute over how such leave should be calculated—more precisely, whether the sixteen-week protected period under the Act is the absolute maximum time that an employee may be away from work on medical leave or whether there is some way to tack on additional time.

---

6. *See, e.g., Barnett v. District of Columbia Department of Employment Services,* 491 A.2d 1156, 1163 (D.C.1985) (exhaustion requirement "is not jurisdictional"). The exhaustion doctrine, however, is a "long settled rule of judicial administration," *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938), and is enforced in all but "exceptional" or "extraordinary" cases. *Barnett,* 491 A.2d at 1164 (concurring opinion).

7. D.C.Code § 36–1301(3) defines "employment benefit" as:

any benefit, other than salary or wages, provided or made available to an employee by an employer, including, but not limited to, group life, health, and disability insurance, sick and annual leave, and educational and pension benefits, regardless of whether the benefit is provided by a policy or practice of an employer or by an employee welfare benefit plan. . . .

Under appellant Harrison's interpretation of the Act, she is entitled to take the statutory sixteen weeks as *unpaid* medical leave in addition to any *paid* sick leave that she may have accrued. She argues that paid sick leave should not be counted as medical leave, as that term is used in the Act.[8] On the other hand, the hospital argues—and the trial court agreed—that the maximum protected period for an employee who is away from work because of illness is sixteen weeks, whether paid or unpaid, and that there is no way to extend the protection of the statute beyond that period.

Appellant's argument must fail because the statute cannot reasonably be read to support it. In pertinent part, the FMLA states:

> [A]ny employee who becomes unable to perform the functions of the employee's position because of a serious health condition shall be entitled to medical leave for as long as the employee is unable to perform the functions, except that *the medical leave shall not exceed 16 workweeks during any 24–month period.*

D.C.Code § 36–1303(a) (emphasis added). The Act also provides that "[a]ny paid medical or sick leave provided by an employer that the employee elects to use for medical leave shall count against the 16 workweeks of allowable medical leave under this chapter." D.C.Code § 36–1303(b)(2).

▮ Construing, as we must, the words of the Act "according to their ordinary sense and with the meaning commonly attributed to them,"[9] we hold that medical leave is any leave taken for medical reasons, including

any leave taken when an employee cannot work because of a "serious health condition." D.C.Code § 36–1303(a).[10] Appellant argues that she was entitled to use all of her accrued sick and annual leave plus the sixteen-week protected period under the Act. That argument, however, is foreclosed by section 36–1303(b)(2), which expressly states that "*any* paid medical or sick leave ... that the employee elects to use for medical leave shall count against the 16 workweeks of allowable medical leave under this chapter" (emphasis added). Thus we hold that the sixteen-week protected period includes both paid and unpaid sick leave. Indeed, under section 36–1303(b)(3), an employee may, if the employer agrees, use "paid vacation, personal, or compensatory leave as medical leave...." Because Ms. Harrison's total medical leave, including her paid sick leave, exceeded sixteen weeks, she was no longer within the FMLA's protected period when the hospital fired her.[11]

Appellant also argues that paid sick leave cannot be counted against the protected period because it is earned as an employment benefit. She asserts in her brief that there is

a fundamental distinction between earned sick leave to which an employee is entitled pursuant to her employer's sick leave policy and the sixteen weeks of unpaid medical leave to which an employee is entitled by virtue of D.C.Code § 36–1303(a).

Because "sick leave" is an employment benefit that cannot, under section 36–1305(a), be taken away, appellant concludes that an em-

---

8. Unfortunately, the FMLA does not define "medical leave."

9. *Davis v. United States,* 397 A.2d 951, 956 (D.C. 1979); accord, e.g., *Peoples Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 753 (D.C. 1983) (en banc).

10. "Serious health condition" is defined to include:

> a physical or mental illness, injury, or impairment that involves:
> (A) Inpatient care in a hospital, hospice, or residential health care facility; or
> (B) Continuing treatment or supervision at home by a health care provider or other competent individual.

D.C.Code § 36–1301(9). The hospital does not dispute that Ms. Harrison was suffering from a serious health condition.

11. Our reading of the statute is further supported by another provision of the Act, D.C.Code § 36–1314. Entitled "Encouragement of more generous leave policies," that section states:

> Nothing in this chapter shall be construed to discourage an employer from the adoption or retention of a family and medical leave policy more generous than the family and medical leave required by this chapter.

We read this language not only as an "encouragement" of employers to be more generous, but also as an acknowledgment by the legislature that the protective coverage provided by the Act has precise and calculable limits.

ployee has the right to take "sick leave" without counting it as "medical leave."

We see no meaningful difference between "sick leave" and "medical leave." The trial court properly rejected Ms. Harrison's argument that counting her four weeks of paid sick leave as part of the sixteen weeks protected under the Act would violate the statutory prohibition against taking away the employment benefits of a person on medical leave. The court reasoned:

> D.C.Code 36–1305, read as a whole, protects an employee's status *once she returns within the protected period.* Were [Ms. Harrison] to have returned during the 16 weeks, [the hospital] could not have reset to zero her seniority or accumulated sick leave, D.C.Code § 36–1305(a), and would have had to restore her either to her former position, with all of the same benefit structures, or to an equivalent position, with equivalent benefit structures, D.C.Code 36–1305(d). The FMLA thus ensures that employees lose nothing during the protected period. [Emphasis in original.]

We find no error in the trial court's analysis. What the Act protects is appellant's right to return to the same job (or an equivalent job), with undiminished seniority, within sixteen weeks after going on medical leave. It does not shield her accrued sick leave from being included in the calculation of that protected period; indeed, it expressly states that such accrued leave "shall count against" the sixteen weeks. D.C.Code § 36–1303(b)(2).

Finally, appellant argues that it was improper for the hospital to count her paid sick leave toward the sixteen-week protected period because the hospital never asked whether she "elected to count the period of paid leave against her entitlement under the Act." Under the FMLA, however, the hospital was not required to make any such inquiry. The sole notice requirement applicable to employers is that they post in a conspicuous place "a notice that sets forth ... the pertinent provisions of this chapter and information that pertains to the filing of a complaint under this chapter." D.C.Code § 36–1311.[12] Because the Act imposed no duty on the hospital to contact Ms. Harrison and ascertain whether or not she desired to take medical leave, her notice argument must fail.

For the foregoing reasons, the judgment is

*Affirmed.*

---

12. The FMLA also imposes notice requirements on *employees* to ensure that employers are timely notified of employee decisions to take medical leave whenever such leave is foreseeable. *See* D.C.Code § 36–1303(c). Under the applicable regulations, employees must notify their employers of their desire to take medical leave (1) "as soon as possible prior to the date on which the employee wishes the leave to begin" when the need for leave was not reasonably foreseeable at least thirty days in advance, 4 DCMR § 1608.2, or (2) "not later than two (2) business days after the absence begins" if an emergency "prevents an employee from notifying the employer of the need for ... medical leave prior to the first day of absence...." 4 DCMR § 1608.3. Thus, to the extent that anyone owed a duty to anyone else, it was Ms. Harrison's duty to notify the hospital of her need to take leave as soon as that need arose. The record shows that she did so.