**Linda PRICE, Plaintiff,**

v.

**WASHINGTON HOSPITAL CENTER, Defendant.**

**No. CIV.A.03–0643 DAR.**

United States District Court, District of Columbia.

May 13, 2004.

Richard A. Salzman, Tammany Morgan Kramer, Heller, Huron, Chertkof, Lerner, Simon & Salzman, PLLC, Washington, DC, for Plaintiff.

Trina L. Fairley, Keith J. Harrison, King, Pagano & Harrison, Washington, DC, for Defendant.

## MEMORANDUM OPINION

DEBORAH A. ROBINSON, United States Magistrate Judge.

Plaintiff, in this action against her former employer, Defendant Washington Hospital Center, alleges unlawful termination in violation of the Family Medical Leave Act ("FMLA" or "Act"), 29 U.S.C. §§ 2601 *et seq.* (Count I) and the District of Columbia Family Medical Leave Act ("DCFMLA"), D.C.Code §§ 32–501 *et seq.* (Count II), and unlawful discrimination based on disability in violation of the District of Columbia Human Rights Act ("DCHRA"), D.C.Code §§ 2–1402.11 *et seq.* (Count III). Pending for determination by the undersigned United States Magistrate Judge is Washington Hospital Center's Motion for Summary Judgment (Docket No. 19) and Plaintiff's Motion for Partial Summary Judgment (Docket No. 20). Upon consideration of the motions, the memoranda in support thereof and in opposition thereto and the entire record herein, Defendant's motion will be granted in part and denied in part, and Plaintiff's motion will be denied.

## I. BACKGROUND

Plaintiff Linda Price was employed by Defendant Washington Hospital Center from August, 1998 to May, 2000, as an Administrative Coordinator in the Materials and Biomedical Technology Management Department, and from May, 2000 to March, 2002, as an Administrative Coordinator in the Biomedical Engineering Department ("the Department"). Complaint for Compensatory and Punitive Damages ("Complaint") ¶¶ 2, 6. Plaintiff suffers from "hypertension, diabetes, congestive heart failure, anemia, diabetic eye disease, and end-stage renal disease[,]" and as a result is "on peritoneal dialysis every six hours, four times per day" and "several prescription medications[.]" *Id.* ¶ 4. Plaintiff asserts that "[d]uring the course of her employment with [Washington Hospital Center], Plaintiff occasionally had doctor's appointments or other medial appointments[,]" but that she "routinely scheduled her medical appointments in the early morning or else at the end of the day to minimize any disruption to her work schedule" and that she would often work late or through her lunch period to compensate. *Id.* ¶ 8.

Beginning in May, 2000, Caroline Campbell, the Director of the Department, became Plaintiff's immediate supervisor. *Id.* ¶ 9. On June 29, 2001, Plaintiff was treated in an emergency room after she "became very sick, with chest pains, nausea, swollen legs, and blood pressure of 210/160." *Id.* ¶ 11. During Plaintiff's July, 2001 performance review, Ms. Campbell informed her "that the medical appointments were causing hardship to the office." *Id.* ¶ 10. In August, 2001, Plaintiff informed Ms. Campbell of her hypertension and that her doctor wanted her to have weekly appointments to have her blood pressure checked. *Id.* ¶ 12. Plaintiff asserts that "Ms. Campbell disapproved of these weekly appoint-ments, telling Plaintiff that Plaintiff did not 'need to see the doctor every week' because a lab technician at [Washington Hospital Center] could check Plaintiff's blood pressure for her." *Id.* Plaintiff claims that she "made every reasonable effort to schedule her medical treatment and medical supervision in a manner that did not unduly disrupt the operations of the department[,]" and that she was "forced to cancel and reschedule numerous medical appointments because of work." *Id.*

In December, 2001, Plaintiff went to the emergency room after "experiencing chest pain, leg pain, nausea, vomiting, and dizziness" and was hospitalized for uncontrolled hypertension and renal failure. *Id.* ¶ 14. Plaintiff asserts that she informed Ms. Campbell of "her health condition and that she would likely need to go on dialysis." *Id.* ¶ 15. In January, 2002, Ms. Campbell informed the Department at a staff meeting that "Plaintiff had hypertension and renal problems—that her kidneys were 'shutting down'—and that Plaintiff would be on sick leave from work." *Id.* ¶ 16. On January 5, 2002, Plaintiff was released from the hospital and put on bed rest. *Id.* 18. Plaintiff's doctor informed her that she would probably be ready to return to work on January 22, 2002. *Id.*

On January 22, 2002, Plaintiff, reported to work and appeared at the Defendant's Occupational Health Office ("OHO") for a medical examination. *Id.* ¶ 19. Plaintiff was informed that she was ineligible to return to work because her blood pressure was too high. *Id.* On January 29, 2002, Plaintiff's doctor, Dr. Mathur, informed her that she could not return to work until February 6, 2002. *Id.* ¶ 20. Plaintiff contends that she faxed Dr. Mathur's report to the OHO and remained on bed rest. *Id.* On February 6, 2002, Ms. Campbell informed Plaintiff "over the phone that her

position was being eliminated and that Plaintiff was terminated effective March 8, 2002." *Id.* ¶ 21.

In Count I of her Complaint, Plaintiff alleges that the Defendant violated her rights under the FMLA by terminating her employment "while [she] was out on approved medical leave under the [FMLA]." *Id.* ¶¶ 30–31. In Count II, Plaintiff alleges that Defendant violated her rights under DCFMLA by terminating her employment "while [she] was out on approved medical leave under [DCFMLA]." *Id.* ¶¶ 34–36. In Count III, Plaintiff alleges that "Defendant intentionally discriminated on the basis of disability" in violation of the DCHRA. *Id.* ¶ 40.

## II. CONTENTIONS OF THE PARTIES

Defendant moves for summary judgment with respect to all of Plaintiff's claims. Plaintiff cross-moves for summary judgment with respect to the issue that she "has made out a prima facie case that defendant violated the federal and DC FMLA." Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's Memorandum") at 10.

### A. Federal Family Medical Leave Act (Count I) and District of Columbia Family Medical Leave Act (Count II)

Defendant maintains that Plaintiff cannot carry her burden of establishing a prima facie case under either the FMLA or the DCFMLA, because she cannot show that she was protected under the statute, treated less favorably than a similarly situated employee or was discharged because of her request for leave. Memorandum in Support of Defendant Washington Hospital Center's Motion for Summary Judgment ("Defendant's Memorandum") at 37.

Defendant asserts that "Plaintiff has not alleged nor offered any proof that she worked the requisite number of hours during the year prior to taking medical leave" to be an "eligible employee" under either the FMLA or the DCFMLA. *Id.* at 38. Defendant contends that Plaintiff cannot sustain a FMLA or a DCFMLA claim because there is no evidence that the decision-maker, Michael Ugwueke, had knowledge of her medical leave. *Id.* at 39. Further, Defendant asserts that there is no evidence that Plaintiff was treated less favorably than a similarly-situated employee who did not request medical leave. *Id.* at 39–40. Defendant submits that even if the Court were to find that Plaintiff had established a prima facie case under FMLA, Defendant would still be entitled to summary judgment, since "Plaintiff was terminated as part of a legitimate [reduction-in-force] and she was unable to perform the essential functions of her position as a result of her continuing medical conditions." *Id.* at 43.

Plaintiff opposes Defendant's motion, and cross-moves for summary judgment with respect to her prima facie case that Defendant violated the FMLA and the DCFMLA. Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Opposition") (Docket No. 21) at 15; Plaintiff's Memorandum at 7–10. With respect to her FMLA and DCFMLA claims, Plaintiff contends that she has established a prima facie case that she suffered from a "serious health condition" as defined by both statutes; that at the time she requested medical leave, her health was such that she unable to perform the functions of her job; and that Defendant was notified of her need for medical leave under the FMLA and DCFMLA. Plaintiff's Memorandum at 7–10.

In her opposition to Defendant's motion, Plaintiff submits that she has demonstrat-

ed that she has "worked far more than the minimum hours required to qualify under both laws." Plaintiff's Opposition at 16. Plaintiff asserts that Defendant's contention that Mr. Ugwueke was unaware of Plaintiff's health status is "simply false[,]" and that "he signed off on Price's first FMLA leave request form." *Id.* at 22. Plaintiff further submits that in any event, there is evidence that the official responsible for her termination, Caroline Campbell, made the recommendation to Mr. Ugwueke, who served only as "the 'cats paw' of Campbell's animus[,]" that Plaintiff be terminated. *Id.* at 23 (citations omitted). Further, Plaintiff submits that Defendant has failed to meet its burden of proving that it would have terminated Plaintiff even if she had not been on medical leave. *Id.* at 17–18.

Defendant, in its opposition to Plaintiff's motion for partial summary judgment, submits that Plaintiff cannot demonstrate that she was protected under either the FMLA or the DCFMLA at the time of her termination. First, Defendant contends that because Plaintiff took 19 workweeks of medical leave over a 24-month period, she is not covered under the DCFMLA. Washington Hospital Center's Opposition to Plaintiff's Motion for Partial Summary Judgment ("Defendant's Opposition") (Docket No. 22) at 5–7. Defendant submits that Plaintiff was not entitled under either statute to be restored to her former position, or an equivalent, because she could not return to work at the end of her leave period. *Id.* at 7–8. Defendant further submits that Plaintiff is not entitled to relief under the FMLA because she has lost no benefits or compensation as a result of any violation of the FMLA. *Id.* 8–10. Defendant argues that the burden of proving that the employment action would have occurred even if Plaintiff had not taken medical leave should rest with the Plaintiff. Plaintiff further contends that it

is undisputed that "Plaintiff's employment was terminated in a Hospital-wide reduction-in-force." *Id.* at 15, 18–21.

Defendant, in its reply to Plaintiff's opposition to its motion, submits that because Plaintiff could not return to work until April 1, 2002, after the expiration of her leave, she cannot show that she was entitled to restoration under either the FMLA or the DCFMLA. Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Defendant's Reply") (Docket No. 24) at 2. Defendant further submits that the only evidence in the record is that Plaintiff's Administrative Coordinator position would have been eliminated even if Plaintiff had not taken medical leave; that Plaintiff does not dispute that Defendant underwent a reduction-in-force ("RIF"); that the Department had a salary reduction target of $167,000, which it could not have met without eliminating Plaintiff's position; and that Plaintiff's position was not essential to the functioning of the Department. *Id.* at 4–15.

Plaintiff, in her reply to Defendant's opposition to her motion, submits that she was "entitled to 16 weeks of protected DCFMLA leave in 2002, carrying through April 19, 2002[,]" and that Defendant's "argument that her leave expired on February 8, 2002 is simply wrong." Reply Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's Reply") (Docket No. 23) at 10. Plaintiff further asserts that she would have returned to work by March 25, 2002 had Defendant not notified her of her termination on February 6, 2002. *Id.* at 10–13.

**B. Plaintiff's District of Columbia Human Rights Act Claim (Count III)**

Defendant contends that summary judgment is appropriate with respect to Plaintiff's DCHRA claim on the ground that

Plaintiff has failed to satisfy any of the three elements of a prima facie case. First, Defendant argues that Plaintiff is not disabled within the meaning of the DCHRA. Defendant's Memorandum at 23–29. Second, Defendant asserts that Plaintiff was not qualified to perform the essential functions of her position at the time of her termination. *Id.* at 29–32. Third, Defendant submits that there is no evidence that Plaintiff's termination was related to her physical condition. *Id.* at 32–33. In the alternative, Defendant contends that even if it is assumed that Plaintiff has established a prima facie case of disability discrimination, Defendant has established a legitimate, nondiscriminatory reason for her termination, *i.e.*, that Plaintiff's position was eliminated during a hospital-wide RIF. *Id.* at 33–36. Further, Defendant submits that Plaintiff has provided no evidence that the RIF was a pretext for discrimination. *Id.*

Plaintiff, in her opposition, maintains that her physical condition substantially limits her in a number of major life activities, and that she accordingly suffers from a "disability" within the meaning of the DCHRA. Plaintiff's Opposition at 27–34. Second, Plaintiff submits that she was qualified for her position in that "she possessed the necessary skills and credentials for the job, and could perform the job's core functions either with or without accommodation[.]" *Id.* at 36 (citation omitted). Plaintiff concedes that Defendant has met its burden in articulating a legitimate, nondiscriminatory reason for Plaintiff's termination, *see id.* at 36, but asserts that there is sufficient evidence of pretext to preclude summary judgment. *Id.* at 36–39.

Defendant, in its reply, asserts that Plaintiff's evidence is insufficient to establish that she was disabled within the meaning of DCHRA at the time of her termination. Defendant's Reply at 23–24. Further, Defendant argues that Plaintiff cannot make out a prima facie case of discrimination because she cannot demonstrate that she was either replaced by someone outside of her protected class, or that a similarly situated employee was treated more favorably. Accordingly, Defendant submits Plaintiff has failed to offer evidence that her termination was a result of her alleged disability. *Id.* at 16–19. Lastly, Defendant submits that Plaintiff has failed to rebut Defendant's legitimate explanation for the challenged action. *Id.* at 19–23.

### III. STANDARD OF REVIEW

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C.Cir.1995). The nonmoving party cannot merely rest upon the allegations included in the complaint, and instead, must identify the specific facts which demonstrate that there is a genuine issue for trial. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The burden is upon the nonmoving party to demonstrate that there are material facts in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). There is a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Material facts are in dispute if they are capable of affecting the outcome of the suit under governing law. *Id.* In considering a motion for summary judgment, all evidence and inferences to be

drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). The "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Bayer v. United States Dept. of Treasury*, 956 F.2d 330, 333 (D.C.Cir.1992).

This circuit has held that because proof of discrimination may be difficult for a plaintiff to establish, "the court should view summary judgment motions in such cases with special caution." *Childers v. Slater*, 44 F.Supp.2d 8, 15 (D.D.C.1999) (citing *Aka v. Washington Hosp. Ctr.*, 116 F.3d 876, 879 (D.C.Cir.1997)); *see also Johnson v. Digital Equip. Corp.*, 836 F.Supp. 14, 18 (D.D.C.1993). Nevertheless, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Rather, she must come forward with "specific facts showing that there is a genuine issue for trial." *Id.* at 587, 106 S.Ct. 1348; FED. R. CIV. P. 56(e).

Moreover, Rule 56(e) of the Federal Rules of Civil Procedure provides, in relevant part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. P. 56(e). The nonmoving party must therefore

> go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," *designate "specific facts showing that there is a genuine issue for trial"* ... Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing[.]

*Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (emphasis added).

## IV. DISCUSSION

### A. Federal Family Medical Leave Act and District of Columbia Family Medical Leave Act

In Count I of her Complaint, Plaintiff alleges that "Defendant unlawfully terminated Plaintiff's employment while Plaintiff was out on approved medical leave under the federal Family and Medical Leave Act" and thereby "violated Plaintiff's statutorily protected rights under the FMLA." Complaint ¶¶ 30–31. In Count II, Plaintiff alleges that "Defendant unlawfully terminated Plaintiff's employment while Plaintiff was out on approved medical leave under the D.C. Family and Medical Leave Act" and thereby "violated Plaintiff's statutorily protected rights under the DCFMLA." Complaint ¶¶ 40–41.

The FMLA is applicable where an employee has worked at least 1,250 hours a year at a firm employing 50 or more employees at least 20 weeks of the year. *See* 29 U.S.C. § 2611(2), (4) (defining "eligible employee"). Generally, the FMLA provides that an "eligible employee" who has a "serious health condition that makes the

employee unable to perform the functions of [her] position" is entitled to up to 12 weeks of medical leave during any 12–month period without suffering any adverse employment action by her employer.[1]  29 U.S.C. § 2612(a)(1); 29 C.F.R. § 825.112(a)(4). The FMLA provides that "on return from [leave under section 2612][,]" an employee is entitled "to be restored by the employer to the position of employment held by the employee when the leave commenced[,]" or to an "equivalent position." 29 U.S.C. § 2614(a)(1).

The DCFMLA provides that "any employee who becomes unable to perform the functions of the employee's position because of a serious health condition shall be entitled to medical leave for as long as the employee is unable to perform the functions, except that the medical leave shall not exceed 16 workweeks during any 24–month period." D.C.Code § 32–503(a). "Under both the DCFMLA and the FMLA, an employee of a covered employer is entitled to take protected medical leave when unable to perform his or her job functions because of a 'serious health condition.'" *Chang v. Inst. for Public–Private P'ships, Inc.*, 846 A.2d 318, 326–27 (D.C.App.2004) (citing D.C.Code § 32–503(a); 29 U.S.C. § 2612(a)(1)(D) (2000)). Like the federal FMLA, the DCFMLA provides that an "employee returning from medical leave will be restored to the same position which that employee held when the leave began, or to an equivalent position." *Harrison v. Children's Nat'l Med. Ctr.*, 678 A.2d 572, 575 (D.C.1996).[2]

The Department of Labor regulations which further implement the FMLA caution that

> [a]n employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period. An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment.  For example: (1) If an employee is laid off during the course of taking FMLA leave and employment is terminated, the employer's responsibility to . . . restore the employee cease[s] at the time the employee is laid off[.]

29 C.F.R. § 825.216(a).[3]  "Unlike the right to commence leave, an employer can deny the right to reinstatement in certain circumstances, because United States Department of Labor regulation qualifies the right." *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1354 (11th Cir.2000)(quoting 29 C.F.R. § 825.216(a)).

The conduct made unlawful by the FMLA is set forth at section 2615 of the Act. Two forms of conduct are proscribed by the Act. First, the Act provides that it shall be unlawful for any employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter[,]" or "to discharge or in any other manner dis-

---

1.  The FMLA defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves [either] inpatient care in a hospital . . . or continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

2.  The DCFMLA, provides, in pertinent part, that an "employee shall be . . . [r]estored by the employer to the position of employment

held by the employee when the family or medical leave commenced[,]" or to an "equivalent" position.  D.C.Code § 32–505(d).

3.  The regulation was issued pursuant to 29 U.S.C. § 2654, which provides that "[t]he Secretary of Labor shall prescribe such regulations as are necessary to carry out" the statute.

criminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(1), (2). Second, the Act provides that it shall be unlawful for any person "to discharge[,]" or "in any other manner discriminate against any individual" because such individual has, with respect to any proceeding or inquiry under or related to the FMLA, "filed a charge or . . . instituted or caused to be instituted any proceeding"; "given, or is about to give information"; or "testified, or is about to testify[.]" 29 U.S.C. § 2615(b)(1), (2), (3).[4] *See O'Connor*, 200 F.3d at 1352 (FMLA recognizes "two types of claims for alleged violations" of the Act's provisions: "interference claims" and "retaliation claims"); *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir.1999)(FMLA "establishes two categories of broad protections": "prescriptive protections that are expressed as substantive statutory rights[,]" and "protection in the event [employees] are discriminated against for exercising their rights under the Act") (citations omitted); *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir.1998) (the FMLA "creates a series of substantive rights[,]" and "provides protection in the event an employee is discriminated against for exercising those rights."); *Smith v. Univ. of Chicago Hospitals*, 2003 WL 22757754, at *5 (N.D.Ill.

Nov. 20, 2003) (FMLA "insure[s] the availability" of the "broad protections for employees who need to take [reasonable leave for medical purposes][,]" and "affords employees protection in the event they are discriminated or retaliated against for exercising their rights under the Act.").

Plaintiff's complaint does not include any allegation of "[i]nterference with proceedings or inquiries[,]" which is proscribed by section 2615(b). Nor does Plaintiff allege any "[i]nterference" with her "[e]xercise of rights" under section 2615(a)(1) of the FMLA.[5] Rather, Plaintiff alleges simply that she was "unlawfully terminated . . . while [she] was out on approved medical leave under the [federal and District of Columbia] Family and Medical Leave Act." Complaint ¶¶ 30, 35.

The word "terminate" does not appear in section 2615. While the term "discharge" appears in section 2615(a)(2) of Title 29, the conduct which is proscribed is "to discharge" an individual, or in any other manner discriminate against an individual, "for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). However, Plaintiff does not allege that she was terminated for "opposing any practice" made unlawful by the FMLA.[6]

---

4. The DCFMLA provides that it "shall be unlawful for any person to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided by this chapter[,]" and for "an employer to discharge or discriminate in any manner against any person because the person: (1)[o]pposes any practice made unlawful by this chapter; (2)[p]ursuant or related to this chapter: (A) [f]iles or attempts to file a charge; (B) [i]nstitutes or attempts to institute a proceeding; or (C) [f]acilitates the institution of a proceeding; or (3)[g]ives any information or testimony in connection with an inquiry or proceeding related to this chapter." D.C.Code § 32–507.

5. Indeed, Plaintiff acknowledges that Defendant granted each of her requests for medical leave. *See* Plaintiff's Statement of Undisputed Facts in Support of Partial Motion for Summary Judgment ¶ 11 ("Plaintiff submitted additional requests for medical leave on February 6, 2002, covering the period from January 23, 2002 through February 15, 2002, and on February 27, 2002, covering the period from February 16, 2002 through March 8, 2002 . . . [a]ll of plaintiff's request for medical leave were approved by Campbell and Michael Ugwueke[.]").

6. *See* n. 4, *supra*.

■ Moreover, Plaintiff concedes that the position which she held at the time her medical leave commenced was eliminated pursuant to a RIF. *See* Plaintiff's Opposition at 11; Plaintiff's Opposition, Sworn Declaration of Linda Prices (Exhibit 2) ¶ 10 ("Caroline told me over the phone that I was being terminated due to a RIF and that the termination was effective March 8, 2002); Plaintiff's Opposition, February 6, 2002 Letter from Wayne L. Swann to Linda Price (Exhibit 4) ("I regret to inform you that your position is affected and that your position has been eliminated."). Neither the FMLA nor the DCFMLA directly address the elimination of the position of an employee covered by either statute during a RIF. However, because the Department of Labor regulations provide that "[a]n employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period[,]" Plaintiff cannot demonstrate that the elimination of her position pursuant to a RIF while she was on medical leave violated either medical leave statute. *Ilhardt v. Sara Lee Corp.*, 118 F.3d 1151, 1157 (7th Cir.1997)(employer would have had no obligation to reinstate employee whose position was eliminated as part of a RIF "because an employer's responsibility to continue FMLA leave and restore an employee 'cease at the time the employee is laid off[.]' ").[7]

In sum, the Court finds that Plaintiff has not alleged any claim for which either the FMLA or the DCFMLA provides a cause of action. Accordingly, Plaintiff's Motion for Partial Summary Judgment will be denied, and Washington Hospital Center's Motion for Summary Judgment will granted with respect to Counts I and II of Plaintiff's Complaint.

## B. District of Columbia Human Rights Act

The DCHRA makes it an "unlawful discriminatory practice" for an employer to "discharge" an employee for "wholly or partially for a discriminatory reason based upon the actual or perceived ... disability." D.C.Code § 2–1402.11(a)(2001). In considering claims brought under the DCHRA, courts apply "the same three-part, burden-shifting test articulated by the Supreme Court for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Futrell v. Dep't of Labor Fed. Credit Union*, 816 A.2d 793, 802 (D.C.2003) (citations omitted).

■ *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny established the framework which governs the allocation of the burden of production in cases in which discrimination based on disparate treatment is alleged. To satisfy the first element of the *McDonnell Douglas* framework, the plaintiff must prove a prima facie case by a preponderance of the evidence. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. In the instant action, both parties generally agree that to establish her prima facie case, Plaintiff must demonstrate that (1) she has a "disability" within the meaning of DCHRA;

---

7. In separate published opinions, the First, Ninth and Eleventh Circuits have addressed the merits of FMLA claims predicated upon a RIF or layoff of an employee who had taken medical leave under the Act. However, unlike Plaintiff in the instant action, the employees in those cases alleged interference, retaliation, or denial of the statutory right to reinstatement as the basis of the FMLA claim. *See Liu v. Amway Corp.*, 347 F.3d 1125, 1133 (9th Cir.2003)(interference claim); *O'Connor*, 200 F.3d at 1352 (claim based on denial of statutory right to reinstatement); *Hodgens*, 144 F.3d at 160 (retaliation claim).

(2) she was "qualified" for the position in question; (3) she suffered an adverse personnel action; and (4) the adverse action occurred under circumstances that give rise to an inference of unlawful discrimination. Defendant's Memorandum at 21; Plaintiff's Opposition at 25. Further, both parties agree that the fourth element may be established by a showing that Plaintiff was replaced by someone outside her protected group, or that employees outside of her protected group were treated more favorably. Plaintiff's Opposition at 25 (citation omitted); Defendant's Reply at 16.

If a plaintiff succeeds in proving his or her prima facie case, a presumption that the employer unlawfully discriminated against the employee arises, *see Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and the burden shifts to the defendant "to articulate some legitimate nondiscriminatory reason for the employee's rejection." *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817.

Finally, if the defendant successfully carries this burden, then the presumption of discrimination disappears, and the plaintiff "must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were pretext for discrimination." *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089 (citing *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817); *see also St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). At this point, plaintiff's ultimate burden of proving intentional discrimination merges with her burden of demonstrating pretext. *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089. Plaintiff, at all times, retains the ultimate burden of persuading the trier of fact that defendant intentionally discriminated

against him or her. *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089.

The parties do not dispute that Plaintiff suffers from hypertension, diabetes and end-stage renal disease. Defendant's Memorandum at 23. However, Defendant submits that "Plaintiff cannot establish her prima facie case under the DCHRA because due to mitigating measures, her hypertension is not a 'disability' under applicable law." Defendant's Memorandum at 2.

The DCHRA defines "disability" as a "physical or mental impairment that substantially limits one or more of the major life activities of an individual having a record of such an impairment or being regarded as having such an impairment." D.C.Code § 2–1401.02(5A). The District of Columbia Court of Appeals has held that definition of "disability" provided in the DCHRA is substantially similar to that provided for in the Americans with Disability Act ("ADA"), 42 U.S.C. § 12102(2), and "consider[s] decisions construing the ADA as persuasive in [the court's] decisions construing comparable sections of DCHRA." *Grant v. May Dep't Stores Co.,* 786 A.2d 580, 583 (D.C.2001) (citations omitted).

The Supreme Court has held that "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). Major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Grant,* 786 A.2d at 584 (citation omitted). Working is widely recognized as a major life activity. *E.g., Toyota,* 534 U.S. at 198, 122

S.Ct. 681; *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 491, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999); *Scarborough v. Natsios,* 190 F.Supp.2d 5, 21 (D.D.C.2002).

■ The undersigned finds that Plaintiff has set forth specific facts showing that there is a genuine issue for trial with respect to both the elements of her prima facie showing and evidence of pretext. For example, with respect to the issue of whether Plaintiff suffers from a "disability" within the meaning of the DCHRA, Plaintiff's declaration is corroborated by (1) a letter prepared by Frank Kriger, M.D., which indicates that Plaintiff requires in-center hemodialysis treatments each Tuesday, Thursday and Saturday from approximately 6:30 a.m. to 10:15 a.m., and (2) an admission note from the Southern Maryland Hospital Center, which confirms the diagnosis of uncontrolled hypertension, diabetes and chronic renal failure, and notes that she suffered from shortness in breath during her admission. Plaintiff's Opposition, Exhibits 7, 10. Indeed, evidence offered by Defendant shows that in January, 2002, the Defendant's nurse practitioner took Plaintiff's blood pressure, found it to be "too high," and would not clear Plaintiff to return to work pursuant to Defendant's Managed Disability guidelines. *See* Defendant's Memorandum, Deposition of Linda Price (Exhibit A), p. 34; Defendant's Memorandum, Occupational Health Medical Referral Form dated January 22, 2002 (Exhibit F).

Further, the undersigned finds that Plaintiff has offered sufficient evidence of pretext to preclude the entry of summary judgment. First, Plaintiff offers evidence of Ms. Campbell's negative comments regarding Plaintiff's need for medical leave. Plaintiff's Opposition, Sworn Declaration of Linda Price (Exhibit 2) ¶ 5; Plaintiff's Opposition, Campbell Deposition (Exhibit 3) at 187. Second, Plaintiff offers evidence regarding the timing of Ms. Campbell's decision to include her position in the RIF, just four days after learning Plaintiff would be required to undergo dialysis treatment. *See* Plaintiff's Opposition, Campbell Deposition at 199; *see also* Defendant's Statement of Material Facts Not in Dispute ¶ 49. Third, Plaintiff offers evidence from which a jury could infer that Ms. Campbell's explanation for including Plaintiff's position among those eliminated in the RIF was false. Plaintiff's Opposition, Campbell Deposition at 151 (supervisor concedes that at the same time the proposed reductions were approved, she received approval to create a new administrative position).

In sum, the undersigned finds that genuine issues with respect to Plaintiff's DCHRA claim preclude summary judgment. Accordingly, Defendant's motion for Summary Judgment with respect to Plaintiff's DCHRA claim, Count III of her Complaint, will be denied.

## V. CONCLUSION

A separate Order (Docket No. 47) incorporates the findings set forth herein.